**WASHINGTON POST COMPANY, Appellant,**

v.

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Appellees.**

No. 88–5094.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1988.

Decided Jan. 6, 1989.

Paul Mogin, with whom Kevin T. Baine and Boisfeuillet Jones, Jr., Washington, D.C., were on the brief, for appellant.

Mark E. Nagle, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before WALD, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

For nine years, The Washington Post Company ("the Post") has been seeking access under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to certain financial disclosure forms filed by scientists who work as consultants for the National Cancer Institute ("NCI"). In the most recent chapter, the Post appeals the district court's grant of summary judgment to the Department of Health and Human Services ("HHS" or "the Department") pursuant to FOIA exemption 4, which authorizes the government to withhold financial information obtained from third parties that is "confidential." The Post claims that a genuine issue of material fact exists as to the effect of disclosure on impairment of the government's ability to obtain the information it needs from its scientist-consultants. We agree that such a dispute exists and that summary judgment was therefore inappropriate.

## I. BACKGROUND

The NCI is a division of the National Institutes of Health ("NIH"), *see* 42 U.S.C. § 281, which is itself a part of HHS. The

NCI is responsible for overseeing the disbursement of hundreds of millions of dollars each year to support cancer research. Aiding the NCI in its duties are hundreds of part-time "consultants," prominent scientists who volunteer to serve on NCI advisory "peer review" committees to evaluate various grant and contract proposals.

An invitation to serve as a consultant is contingent upon the scientist's completion of Form HHS–474 (formerly HEW–474), entitled "Confidential Statement of Employment and Financial Interests." First required by Executive Order No. 11,222,[1] the form is designed to elicit appointees' potential conflicts of interest. Appointees are asked, *inter alia*, to "[l]ist all organizations in which you, your spouse, minor child, partner, or an organization with which you are connected have financial interests which relate directly or indirectly to your consultant duties."

The Post first submitted a FOIA request for the Forms HHS–474 completed by NCI consultants on February 14, 1980. Despite the auspicious overtones of the date, however, this was destined to be no sweetheart deal. Initially spurned by HHS, the Post filed suit in the district court seeking to compel disclosure of the forms.

In its first pass on this case, the district court found that FOIA exemption 4, *see* 5 U.S.C. § 552(b)(4) (covering commercial or financial materials that are "obtained from a person" and are "privileged or confidential"), did not exempt Form HHS–474 from disclosure, because the forms did not contain "financial" information. The court further held, however, that the forms *were* shielded by exemption 6, *see* 5 U.S.C. § 552(b)(6) (permitting withholding of "personnel and medical files and similar files" whose disclosure would be "a clearly unwarranted invasion of personal privacy").

On appeal, the case was reversed and remanded to the district court. *See Washington Post Co. v. HHS*, 690 F.2d 252

(D.C.Cir.1982) (*Post v. HHS I*). We held that the consultants' exemption 6 privacy interests were minimal in comparison to the public's "singularly strong interest in disclosure of consultants' conflicts of interest." *Id.* at 264. We went on to conclude, however, that Form HHS–474 *did* contain "financial" information as that term is used in exemption 4. *Id.* at 266. We also noted that HHS had not contended that the form should be withheld as "privileged," but that it was still an open question whether the information should be deemed "confidential." In particular, we cited "the possibility that part-time consultants may construe Form 474's disclosure requirement narrowly and thus may not disclose all possible conflicts of interest." *Id.* at 269. Were this a likely result, exemption 4 might come into play on the ground that disclosure would "impair the Government's ability to obtain necessary information in the future." *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974) (footnote omitted) (*National Parks I*).[2] However, the only evidence before the court on the first appeal was a single conclusory affidavit from Robert Eaglesome, Director of Personnel Policy for HHS, in which he stated his "professional opinion" that disclosure "would impair the Department's ability to obtain candid and accurate information in the future." 690 F.2d at 257. We therefore remanded the case to the district court "to give the government an opportunity to provide the detailed factual justification for withholding" that this court had earlier required in an exemption 4 inquiry. *Post v. HHS I*, 690 F.2d at 269 (citing *Pacific Architects & Engineers, Inc. v. Renegotiation Board*, 505 F.2d 383, 385 (D.C.Cir.1974)).

On the second round before the district court, the government pursued an argument that it had not previously raised before that court or in the first appeal: *i.e.*, that because the Forms HHS–474 had been

---

**1.** 3 C.F.R. § 306 (1964–1965 Compilation), *reprinted in* 18 U.S.C. § 201 note at 1025–27 (1976).

**2.** The other prong of the exemption 4 test announced in *National Parks I*, whether disclosure

is likely "to cause substantial harm to the competitive position of the person from whom the information was obtained," 498 F.2d at 770, was found not to be in issue in this case. *Post v. HHS I*, 690 F.2d at 268.

held privileged in the context of civil discovery, they could also be withheld under the "privileged" arm of exemption 4. The district court agreed, relying on *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), and again granted the government's motion for summary judgment. *See Washington Post Co. v. HHS*, 603 F.Supp. 235 (D.D.C.1985). On appeal, this court again reversed, finding unjustified "HHS's tardy assertion of its exemption 4 'privilege' defense." *Washington Post Co. v. HHS*, 795 F.2d 205, 208 (D.C.Cir.1986) (*Post v. HHS II*). We again remanded the case, this time "with instructions to determine whether the Forms 474 contain information that is 'confidential' under exemption 4." *Id.* at 209.

That detour over, we come at last to the decision now under review. Confronting the case on a second rebound, the district court agreed at the outset that "[t]he only issue left for discussion ... is whether disclosure is likely to impair the government's ability to obtain similar information in the future." *Washington Post Co. v. HHS*, Civ. No. 80–01681, mem. op. ("Mem. Op.") at 3 (D.D.C. Nov. 20, 1987) (Joint Appendix ("J.A.") at 59). The court explained (as we had observed in *Post v. HHS I*) that conceivably

> because Form 474 leaves room for interpretation of which financial interests "relate directly or indirectly to [the individual's] consultancy duties," part-time consultants might construe that instruction narrowly and thus fail to disclose all possible conflicts of interest. Should such selective reporting occur, the government's access to full and accurate information would be impaired.

Mem. Op. at 4 (J.A. at 60). The record before the district court contained affida-vits from various officials at NCI, NIH, and HHS, *see* J.A. at 73–76, 79–149, expressing concern that this consequence might follow disclosure of the forms.[3] Noting that such a result was inevitably "speculative," the court nevertheless concluded that "the arguments advanced by the government are sufficient to support a finding of potential impairment." Mem. Op. at 6 (J.A. at 62).

Despite its observation that the impairment issue was the only question left in the case, the district court proceeded to entertain the government's separate contention that qualified individuals might forego participation in the peer review process altogether if their listing of financial interests were made publicly available. The government offered as proof of this recruitment aspect the results of an informal survey it had conducted suggesting that of the 49 NCI consultants (out of a total of 467) who had reported at least one financial interest on the relevant portion of Form HHS–474, five would decline to participate in the future if the forms were publicly disclosed, and an additional five had a "clear objection to disclosure," but would still accept future service. J.A. at 144–49 (Affidavit of William A. Walter, Deputy Director, NCI). The district court correctly recognized that this information was irrelevant to the question of "impairment"—that is, to whether those scientists who *do* become involved with NCI committees will narrowly construe the financial disclosure requests. However, citing language from *Post v. HHS I*,[4] the district court proceeded to reinject the potential risk of nonparticipation into the inquiry by considering it in the "balancing procedure" that it thought to be proper under the exemption 4 "confidentiality" analysis. Mem. Op. at 8 (J.A. at 64).[5]

---

3. For example, Vincent T. DeVita, Jr., Director of the NCI, stated in his affidavit, "I am convinced that public availability of [Form HHS–474] can only adversely affect the peer review system by ... (3) impairing the completeness and accuracy of the information on the form." J.A. at 130.

4. *See* 690 F.2d at 269 (noting that the exemption 4 confidentiality inquiry "necessarily involves a rough balancing of the extent of impairment and the importance of the information against the public interest in disclosure," but *declining* to "decide ... the details of the balancing process").

5. The district court also determined that its decision to guard the forms' confidentiality was "bolstered by provisions of the Ethics in Government Act, 5 U.S.C. [App] sections 201 *et seq.*"

On the basis of this reasoning, the district court settled what it termed the "close question" whether the information at issue qualifies under FOIA exemption 4 as confidential by deciding, again on a motion for summary judgment, that it does so qualify. The court expressly found "that the extent of the government's impairment and the importance of the information outweigh the public interest in disclosure." Mem. Op. at 10–11 (J.A. at 66–67). The court subsequently denied the Post's motion for reconsideration, further explaining its decision to grant the government's motion for summary judgment:

> Resolution of this dispute involves an analysis of the potential, hypothetical impairment the government might suffer should the requested documents be made available to the public. Due to the nature of the inquiry, there is no definitive proof that may be adduced by either side in support of their respective contentions. At best, the parties may provide the Court with speculation from individuals who speak with varying degrees of authority.

*Washington Post Co. v. HHS*, Civ. No. 80–01681, mem. and order at 1–2 (D.D.C. Jan. 14, 1988) (J.A. at 69–70). The Post shortly thereafter filed this appeal.

## II. ANALYSIS

■ FOIA exemption 4 authorizes withholding "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Like all FOIA exemptions, exemption 4 is to be read narrowly in light of the dominant disclosure motif expressed in the statute. *See Department of Justice v. Julian*, — U.S. ——, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988). It is now conceded that the information contained in Form HHS–474 is "financial" in nature, and that it is "obtained from a person." Moreover, the question of "privilege" was removed from this case in *Post v. HHS II*. The only issue remaining in the case is thus whether the requested information is "confidential" within the meaning of the exemption.

Under the current standard in this circuit, commercial or financial information is "confidential" under exemption 4 if disclosure is likely "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks I*, 498 F.2d at 770 (footnote omitted). Because there is no contention that disclosure of Form HHS–474 would cause any competitive harm, the only inquiry properly before the district court was the question whether disclosure of the financial information contained in Form HHS–474 would be likely to impair the government's ability to gather this in-

*Id.* at 9–10 (J.A. at 65–66). However, as we noted in *Post v. HHS I*, the disclosure exemption contained in that Act for part-time government employees was *not* probative of a congressional desire to exempt NCI consultants from all disclosure requirements. "Thus, we [gave] greater weight to the Act's primary purpose to require public disclosure of conflicts of interest than to the narrow and unexplained exception for employees who work 60 days or less per year." 690 F.2d at 265 & n. 46. The government apparently concedes this much by declining to defend the district court's reliance on this part of the Act.

HHS does contend, however, that a *different* part of the Ethics in Government Act, 5 U.S.C. App. § 207 (Supp. IV 1986), supports the district court's decision here. That section, passed as an amendment to the Ethics in Government Act in 1985, authorizes the President to require executive branch employees to file financial disclosure reports that will remain confidential. This the President did in Executive Order 12,-

565, *reprinted in* 51 Fed.Reg. 34,437 (Sept. 29, 1986), which creates a "Comprehensive System of Financial Reporting" requiring confidential reports *"by those employees whose positions have been designated for this purpose* pursuant to section 404 of this Part." Section 1 (emphasis added). Section 404 in turn requires the Office of Government Ethics to oversee the "designat[ion] [of] the positions for which non-public (confidential) reports will be required." However determinative these new provisions will be if and/or when Form HHS–474 is brought within their purview through official "designation," HHS concedes that the form has not yet been so designated and it appears therefore that the provisions by their own terms do not apply. Moreover, the government failed to raise this argument in the district court. The amendment was passed in 1985, prior to the remand in *Post v. HHS II*. Thus we need not and do not pass on the relationship of the new legislation to the application of exemption 4 in this case.

formation in the future, and if so whether this risk outweighed the public's interest in disclosure.

## A. *Summary Judgment*

Fed.R.Civ.P. 56 authorizes a district court to grant summary judgment when it can be shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the district court is obliged to view the available evidence in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Popham, Haik, Schnobrich, Kaufman & Doty, Ltd. v. Newcomb Securities Co.*, 751 F.2d 1262, 1263 (D.C.Cir.1985) ("Any doubt is to be resolved against the moving party."). The Supreme Court has recently made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. If a genuine dispute does exist over a material issue, then parties should be given the opportunity to present direct evidence and cross-examine the evidence of their opponents in an adversarial setting. *See Washington Post Co. v. United States Dep't of State*, 840 F.2d 26, 30–31 (D.C.Cir.1988) (*Post v. Department of State*) (explaining that "[t]his limitation on the use of summary judgment is not a mere technicality. The integrity of a court's de novo [FOIA] judgment rests upon an adversarial system of testing for truth when critical adjudicative facts are subjects of a contest." (footnote omitted)).[6] Moreover, our previous cases have made it abundantly clear that these general standards under rule 56 apply with equal force in the FOIA context. *See, e.g., id.* at 29–31; *Greenberg v. FDA*, 803 F.2d 1213 (D.C. Cir.1986); *Sears, Roebuck & Co. v. GSA*, 553 F.2d 1378 (D.C.Cir.), *cert. denied*, 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977).

■ From the record before us, it is quite clear that a substantial, "genuine" dispute remains over the critical factual issue in this case—whether public disclosure would cause individuals to so narrowly construe the requests for information in Form HHS–474 that the government's information-gathering ability would be seriously impaired. While the government has offered several affidavits tending to support the notion that this impairment would result,[7] these statements are vigorously contested by the Post's (similarly terse) affidavits in response. For example: "Public disclosure, if anything, would have the effect of ensuring a more complete response because people would want to

---

**6.** A petition for rehearing with a suggestion for rehearing en banc is currently pending in this court challenging the panel's disposition of certain issues in *Post v. Department of State*. The issues raised by the State Department in its petition include the level of deference that this court should accord to the Department's views regarding predictions involving foreign affairs and national security. The State Department has also presented the question whether and how courts should weigh the public interest in disclosure against the privacy interests protected by FOIA exemption 6, 5 U.S.C. § 552(b)(6). (This latter inquiry is presented in a case that is pending before the Supreme Court, *see Reporters Committee for Freedom of the Press v. United States Dep't of Justice*, 831 F.2d 1124 (D.C.Cir. 1987) (on rehearing), *cert. granted*, —— U.S. ——, 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988).) These challenges leave intact, however, the pan-

el's more general discussion of the role of summary judgment in FOIA cases.

**7.** We note with some dismay that the purpose of our original remand in *Post v. HHS I* was to "give the government an opportunity to provide the detailed factual justification for withholding under Exemption 4," 690 F.2d at 269, but the only pertinent change in the record since then is that Robert Eaglesome's original conclusory affidavit, J.A. at 73, has been joined by four equally conclusory affidavits. *See* Affidavits of William F. Raub, J.A. at 79; Vincent T. DeVita, Jr., J.A. at 127; James B. Wyngaarden, J.A. at 133; and Edward N. Brandt, Jr., J.A. at 138. In effect, we asked the government to change the station, and they responded by turning up the volume.

**326**

avoid the risks and embarrassment of being thought not to have fully disclosed." J.A. at 184 (Affidavit of Nicholas A. Ashford, Director of the Center for Policy Alternatives, Associate Professor of Technology and Policy in the School of Engineering at Massachusetts Institute of Technology, and former consultant on several NCI peer review panels). In a similar vein, Dr. J.R. Heller, Jr., a former Director and subsequently a Special Assistant to the Director of the NCI, stated that "the fact that NCI advisors must complete Form 474 to be eligible for service, if combined with knowledge on their part that the forms will be publicly available, will have a beneficial effect on ensuring that related financial interests are fully disclosed." J.A. at 187.

While the district court may of course ultimately determine that the Post's authorities are less believable than the NCI's, it is impermissible to conclude at this stage that *no* reasonable factfinder could be persuaded by the Post's evidence. As this court explained in *Sears, Roebuck & Co.*,

> Where there is a conflict in the affidavits as to what adverse consequences will flow from the revelation of the facts contained in the documents sought to be disclosed, then it appears that there is indeed a conflict regarding very material facts which calls for some type of adversary procedure.

553 F.2d at 1382. In this case, however, rather than giving the Post the benefits of any doubts raised by the factual dispute raised in the affidavits, the district court appears to have decided the summary judgment motion by settling this "close question," Mem. Op. at 10 (J.A. at 66), *against* the nonmoving party.[8]

The district court defended its decision by noting that the "factual" inquiry into impairment required an inherently speculative finding, suggesting that it was therefore justified in cutting off both sides' ability to present probative evidence and to cross-examine each other. In so doing, we think the court short-circuited the factfinding process. "Factual" issues like those presented here are rarely susceptible to definitive proof. Rather, "factual" issues that involve predictive facts almost always require a court to survey the available evidence, to credit certain pieces of evidence above others, and to draw cumulative inferences until it reaches a judgmental conclusion. In the end, the court makes its best assessment about what is most likely to happen in the future. In such an inquiry, the ultimate "facts" in dispute are most successfully approached when all relevant evidentiary underpinnings are fully developed. *See generally Sears, Roebuck & Co.*, 553 F.2d at 1382–83.

Of course, the type and quantity of evidence that is necessary to enable courts to make these factual assessments varies from case to case. Even in this case, the parties may become convinced that a full-scale battle of experts on the issue of impairment would not be in either side's interest. If that is so, they could submit the case for decision on the basis of a stipulated evidentiary record. But at this stage, on this record, it is clear that there is a genuinely controverted factual issue in the case which is not ripe for disposition by *summary judgment.* To resolve this case the judge must pick and choose between competing experts' affidavits as to the effect of disclosure on the likelihood of eliciting complete responses to the questions. The case is therefore remanded to enable both sides to address and contest the issue of impairment, in order to provide the district court with a record on which to decide the crucial issue.

### B. *The Exemption 4 Balance*

■ On remand, if the district court ultimately finds that disclosure will impair the government's information-gathering, it will once again be required to conduct the "rough balancing of the extent of impair-

---

8. Ironically, HHS's only real argument in support of the district court's decision to grant summary judgment collapses back in on itself: HHS attacks the Post's affiants by challenging the *weight* their testimony should be accorded. *See* Brief for Appellee at 19–20. But the need to assess the credibility of witnesses is precisely what places this dispute outside the proper realm of summary judgment.

ment and the importance of the information against the public interest in disclosure." *Post v. HHS I,* 690 F.2d at 269. In performing that balance, we caution that in *this* case, there is no longer any room on the scales for weighing the possibility that public disclosure of Form HHS–474 will cause some scientists to decline service on the NCI's peer review committees altogether. Whatever validity this contention of "nonparticipation" might have had at the start of this litigation (or would have if similar litigation were commenced in the future), for the purpose of this action the issue of nonparticipation was waived by the government when it abandoned the claim before this court in *Post v. HHS I. See* 690 F.2d at 268 n. 51 (noting that it was not necessary to address the government's need to attract qualified scientists because "[t]he government did not ask us in this case to consider including that specific interest in the *National Parks I* test"). Nothing appears in the record or in the arguments before this court to justify excusing the government from the general rule that a party cannot raise anew on remand an issue that it failed to pursue in the appeal.[9]

■ Moreover, the district court may not, as it did below, inject the risk of future scientist nonparticipation in NCI programs into the balancing process on the public interest side when the government is barred from pursuing it on the impairment

side. When we refer to a "rough balancing" under exemption 4, we mean that information will be withheld only when the affirmative interests in disclosure on the one side are outweighed by the factors identified in *National Parks I* (and its progeny) militating against disclosure on the other side. More simply put, "minor" disadvantages flowing from disclosure "cannot overcome the disclosure mandate of FOIA." *Post v. HHS I,* 690 F.2d at 269. When we first announced the test for exemption 4 confidentiality in *National Parks I,* we attempted to capture in two inquiries (serious competitive harm and impairment of government information-gathering) the most obvious interests that Congress was seeking to protect in the exemption, while expressly reserving the question "whether other governmental interests are embodied in this exemption." 498 F.2d at 770 n. 17. In *Critical Mass Energy Project v. NRC,* 830 F.2d 278 (D.C.Cir. 1987), we subsequently found that other interests may indeed be considered under exemption 4. Yet we think a fair reading of our cases makes it clear that other interests can be introduced into the balance only as factors weighing against disclosure, in a manner similar to the two interests identified in *National Parks I.* All of these factors, alone or in combination, are negative interests properly weighed against the strong public interest in disclosure that permeates FOIA. The district court, however, allowed the risk of future scientist

---

**9.** The government contends that because the recruitment issue has consistently been raised before the district court and was never "affirmative[ly] abandon[ed]" before this court, the district court was correct in considering the evidence regarding the risk of nonparticipation by scientists. *See* Brief for Appellee at 15. The government further argues that no policy would be served by a finding that the recruitment claim was abandoned in this case, because the Post has always been aware of the government's contention that public disclosure might cause scientists not to serve as consultants. But the whole point of the rule regarding abandonment of claims is to require that all viable arguments be vigorously pursued throughout the proceedings, thereby allowing for earlier decision, rather than permitting parties to pick and choose which claims will be presented on appeal and which will be held back until a later time. In this case, the government had an opportunity to

raise the recruitment issue in *Post v. HHS I* and it failed to do so. The fact that the Post was made aware of the claim at the first appearance before the district court does not change the situation: we held then and we reaffirm now that the only issue before the district court on remand from *Post v. HHS I* was "the factual determination of whether release of this information is likely to impair the government's ability to obtain similar information in the future." 690 F.2d at 255.

At oral argument, the government further sought to justify its failure to pursue the recruitment claim by noting that it was not as clear six years ago as it is today that factors beyond the two announced in *National Parks I* could be considered under exemption 4 "confidentiality" analysis. The government's contention is undercut, however, by the fact that it *did* present this claim to the district court in 1980.

nonparticipation to *diminish* the overall public interest in disclosure that would be balanced against the negative factors. Such an approach could not have been intended by the drafters of exemption 4 for it would allow courts to count anti-disclosure factors on both sides of the scale, adding weight to the impairment side *and* reducing the weight on the disclosure side. The thrust of FOIA is distinctly in the opposite direction, and exemption 4 contemplates a straightforward balance of the pros and the cons of disclosure in any particular case.

### III. CONCLUSION

For the reasons stated, we vacate the district court's order directing summary judgment for HHS. The issue of whether disclosure of the financial information contained in Form HHS-474 would seriously impair the government's ability to gather the information it needs from participating scientists in the future is a disputed factual issue that does not lend itself to disposition by means of summary judgment on the present record. Reluctantly we return this case once more to the district court for further proceedings consistent with this opinion.

*SO ORDERED.*