**Mary Margaret WARD, et al.**

v.

**SUCCESSION OF Richard W. FREEMAN, et al.**

**Civ. A. No. 85–1254 "I" (4).**

United States District Court, E.D. Louisiana.

May 4, 1990.

---

Robert E. Kerrigan, Jr., Charles K. Reasonover, Darrell K. Cherry and Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiffs.

Curtis R. Boisfontaine and Sally A. Shushan, Sessions & Fishman, New Orleans, La., for defendant Louisiana Coca–Cola Bottling Co., Ltd.

Lawrence R. Levin, Wilson P. Funkhouser, Vance L. Liebman, Damon E. Dunn and Deborah G. Moore, Levin & Funkhouser, Ltd., Chicago, Ill., for defendants, Richard W. Freeman and the Succession of Richard W. Freeman.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the motion of the defendants for summary judgment based on prescription. The Court, having reviewed the motion, the memoranda of counsel, the record, facts, and applicable law, hereby denies the motion for the reasons set forth more fully below.

### The Facts and Procedural History

In an invitation dated April 20, 1982, defendant Louisiana Coca–Cola Bottling Co., Ltd. (LA Coke) presented a tender offer to its shareholders to purchase their common stock at a price of $850 per share. LA Coke claimed in the tender offer to have based this price per share on the $950 purchase price that LA Coke had recently negotiated with some of its larger minority shareholders. The tender offer price was discounted $100 due to the nature of the two offers.

Upon receiving the tender offer, the plaintiffs, each a minority shareholder in LA Coke, individually considered whether or not to tender their shares. Some of the plaintiffs went so far as to contact the defendant directors and officers of LA Coke to inquire further regarding the offer. Those who did so were allegedly told by the defendants and their agents that the tendering price was "fair" and "good." Based in part on these reassurances, as well as fears that LA Coke would again suspend paying dividends and/or "squeeze out" minority shareholders through a reverse stock split, the plaintiffs each agreed to tender their shares pursuant to the 1982 tender.

Primarily through this and other tenders in 1980 and 1983, defendants Richard Freeman, Sr., Richard Freeman, Jr., and Louis Freeman increased their holdings in LA Coke from less than 20% of the outstanding common shares in 1979 to over 86% in late 1983. In November of 1984, the defendants reached an agreement with the Coca–Cola Co. (US Coke) whereby US Coke agreed to buy LA Coke at a price of $6,750 a share. This resulted in the Freemans

receiving over $120,000,000 for their shares.

In January 1985, Mary Freeman Wisdom and other relatives of the Freemans who had tendered their LA Coke stock in 1983 brought a suit against the Freemans involving nearly identical allegations to those made at present. The plaintiffs claim that the publicity which followed the filing of that suit, specifically articles in the *Wall Street Journal* and the *New Orleans Times–Picayune*, was the first indication to them of any fraudulent acts by the defendants.

The plaintiffs filed this action on March 21, 1985. In their complaint, the plaintiffs sought recovery for RICO violations, negligent misrepresentation, securities fraud, state law fraud, controlling person, breach of fiduciary duty, and aiding and abetting.

The case was assigned to the Hon. Martin L.C. Feldman, District Judge for the Eastern District of Louisiana, who presided over a jury trial in the matter. At the first trial, Judge Feldman directed a verdict against the defendants on their affirmative defense of prescription. The jury then rendered a verdict for the defendants on the RICO, negligent misrepresentation, and aiding and abetting counts, and for the plaintiffs on the securities fraud, state law fraud, controlling person, and breach of fiduciary duty counts. The defendants appealed the judgments entered against them. The plaintiffs did not do likewise on the RICO, negligent misrepresentation, and aiding and abetting claims.

The Fifth Circuit reversed and remanded the trial court's ruling directing a verdict against the defendants on the issue of prescription. *Ward v. Succession of Freeman*, 854 F.2d 780, 794 (5th Cir.1988), *reh'g denied*, 863 F.2d 882 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989). In so doing, the Circuit Court stated that there was, "considerable record evidence raising serious questions about the knowledge the plaintiffs had in 1982 about specific 'material omissions'." *Id.* The Court of Appeals further directed the district court on remand to "consider carefully the evidence presented by the de-fendants regarding the time at which the plaintiffs had inquiry notice of each fraudulent act." *Id.* at 795. The defendants now seek summary judgment on the plaintiffs' actions for federal securities fraud and state law fraud through a reassertion of their prescription defense.

*Prescription*

■ There is a two year prescriptive period on federal securities law claims and one year on state law fraud claims. *Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 107 (5th Cir.1987) (the prescriptive period governing Securities Act claims is governed by Louisiana's two year prescriptive period). Although state law governs the proper limitation period, when that period commences is governed by federal law. *Id.*

■ The federal securities law actions in this suit accrued and the prescriptive period began to run when the plaintiffs either had actual knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof. *Vigman v. Community National Bank & Trust Co.*, 635 F.2d 455, 459 (5th Cir.1981) (citations omitted). The defendants claim that the plaintiffs had actual knowledge or at least inquiry notice of the facts which form the basis of their claim. They assert that the plaintiffs have admitted as much in their depositions and other statements. Specifically, the defendants point to the fact that at the time of the tender various plaintiffs: 1) had suspicions that the 1982 tender was part of a scheme by defendants to "squeeze out" minority shareholders in LA Coke and that such a scheme might later involve reverse stock splits detrimental to the plaintiffs' interest in LA Coke; 2) knew that US Coke was purchasing various regional bottling companies as part of an overall bottler restructuring program; and 3) knew that the tender would result in the defendants increasing their proportional shareholdings in LA Coke.

■ The plaintiffs argue that such knowledge does not, however, put them on inquiry notice of acts amounting to state law fraud or violations of federal securities

laws. All the facts the plaintiffs knew about at the time of the 1982 tender offer and all of the maneuvers the plaintiffs suspected that the defendants might employ to squeeze them out were legal and, therefore, nonactionable. The plaintiffs claim that until they were alerted to the allegations within Mary Freeman Wisdom's suit in January of 1985, they had no reason to make investigations or inquiries into possible fraud on behalf of the defendants and their representations or omissions surrounding the 1982 tender offer. Facts to which the plaintiffs claim they had no inquiry notice until January 1985 include: 1) that the use of the $950 price per share which LA Coke had recently negotiated with other minority shareholders was inappropriate as an accurate barometer of the value of the shares due to the particular circumstances of that previous negotiation and therefore the defendants' use of that transaction as a basis for valuing the stock in the 1982 tender was knowingly misleading; 2) that the defendants were privy to information regarding the strong probability of US Coke purchasing LA Coke which should have been revealed to the plaintiffs as part of or prior to the 1982 tender and which omissions constitute actionable violations of securities law; and 3) that the defendants were aware that the tender offer greatly undervalued LA Coke stock.

Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment where, after adequate time for discovery has been allowed, the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]he standard [for

granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

■ The Fifth Circuit has clearly indicated a reluctance to grant summary judgments on the issue of when a prescriptive period begins to run. *See, In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1170 (5th Cir.1979) *cert. denied,* 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980). This Court believes that summary judgment is particularly inappropriate when the crucial date for prescription purposes is the day on which the plaintiff is determined to have actual or constructive knowledge (or inquiry notice) of the defendant's wrongful act. Short of either an admission by the plaintiff of knowledge or a situation where the defendant's acts are public knowledge, few scenarios present the Court with circumstances where, as a matter of law, it can be said that the prescriptive period began on or about a certain day.

The present case does not fall within these narrow confines. The plaintiffs have adequately demonstrated that prior to January of 1985 they can not be held, as a matter of law, to have had inquiry notice of the facts underlying their claim. Issues of material fact exist as to whether or not the plaintiffs acted reasonably at the time they tendered their LA Coke shares in not further investigating any suspicions they had regarding the defendants' wrongdoing in connection with those transactions. Certainly, taken alone, notions of and displeasure with anticipated business realities (*i.e.,* the probable purchase of LA Coke by US Coke and future dividend suspensions) and anticipated, legitimate business posturing (*i.e.,* majority shareholder initiated reverse stock splits) are not enough to put the plaintiffs on even inquiry notice of federal securities and state law fraud violations. In light of the foregoing, the defendants'

696

motion for summary judgment based on prescription is hereby denied.

*Scope of the New Trial*

 Plaintiffs' memorandum in opposition to the summary judgment has raised a second issue to which the defendants have responded in supplemental memoranda. The issue is this: In vacating the judgment of the District Court, has the Court of Appeals reopened the plaintiffs' RICO and negligent misrepresentation claims for retrial by this Court despite the fact that the defendants prevailed on these claims and the plaintiffs did not appeal those judgments?

The defendants argue that principles of judicial finality, waiver, res judicata, and law of the case direct the Court to retry only those claims that were appealed: the state law fraud, securities violations, and breach of fiduciary duty claims.

The general rule is clearly that parties may not renew issues on remand which they failed to pursue on appeal. *Washington Post Co. v. U.S. Department of Health and Human Services*, 865 F.2d 320, 327 (D.C.Cir.1989). Stated another way, issues not raised on appeal are deemed abandoned. *Red v. Blackburn*, 636 F.2d 1027, 1028 (5th Cir.1981).

Nonetheless, the plaintiffs contend that based on the clear language of the Fifth Circuit's mandate, the Court of Appeals has vacated the judgment of the District Court in its entirety and not just as to the claims specifically appealed. The language to which the plaintiffs refer reads:

> We REVERSE the district court's *Garner*, waiver and prescription rulings, VACATE the judgment, and REMAND for a new trial.

*Ward v. Succession of Freeman*, 854 F.2d 780, 795 (5th Cir.1988).

However, the paragraph preceding the Court of Appeals' mandate contains plain language as well. There the Court states:

> Our decision today is limited. We set aside the verdicts rendered *against the defendants* and remand this case for a new trial.

*Id.* (emphasis added). Reading these two excerpts in conjunction, this Court feels that the vacation of judgment applies only to the causes of action and issues which were properly before the Court of Appeals, that is, the claims for state law fraud, federal securities law violations, and breach of fiduciary duty. The plaintiffs' claims under RICO and for negligent misrepresentation are deemed to have been waived and abandoned and the doctrine of res judicata prohibits this Court from retrying those claims.

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment based on prescription is DENIED. IT IS FURTHER ORDERED that the plaintiffs are barred from pursuing their claims under RICO and for negligent misrepresentation by res judicata.