**UNITED STATES of America,
Plaintiff,**

v.

**PHILIP MORRIS USA, INC.,
f/k/a Philip Morris, Inc.
et al.   Defendants.**

No.  CIV.A.99–2496(GK).

United States District Court,
District of Columbia.

March 17, 2004.

Sharon Y. Eubanks, Stephen D. Brody, Frank J. Marine, Andrew N. Goldfarb, U.S. Department of Justice, Washington, DC, for Plaintiff.

Alfred McDonnell, Arnold & Porter, Denver, CO, Amy L. McGinnis, Amy Elizabeth Ralph, Anne McBride Walker, Duane J. Mauney, Floyd E. Boone, Jr., James Miller Rosenthal, Jeanna Maria Beck, Jonathan Louis Stern, Kendall Millard, Kevin M. Green, Leslie Wharton, Melissa L. Marglous, Michael R. Geske,

Murray R. Garnick, Nick Malhotra, Peter Thomas Grossi, Jr., Ryan David Guilds, Sharma Jnatel Simmons, Sharon L. Taylor, Stacy J. Pollock, Susan Louise Lyndrup, Brian K. Esser, Arnold & Porter, Washington, DC, Ashley Cummings, Hunton & Williams, Atlanta, GA, Ben M. Germana, Herbert M. Wachtell, Jeffrey M. Wintner, Steven M. Barna, Wachtell, Lipton, Rosen & Katz, New York City, Bradley E. Lerman, Dan K. Webb, Elizabeth D. Jensen, Jeffrey Wagner, Kevin J. Narko, Luke A. Palese, Ricardo E. Ugarte, Thomas J. Frederick, Winston & Strawn, Chicago, IL, C. Ian Anderson, Davis, Polk & Wardwell, New York City, Cindy L. Gantnier, Cynthia S. Cecil, Erik D. Nadolink, Patricia M. Schwarzschild, Richard H. Burton, Cheryl Grissom Ragsdale, Christy L. Henderson, Michele B. Scarponi, Hunton & Williams, Richmond, VA, Daniel C. Jordan, Hunton & Williams, McLean, VA, James Lewis Brochin, Theodore V. Wells, Jr., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Robert M. Rader, Thomas M. Stimson, Timothy M. Broas, Winston & Strawn LLP, Washington, DC, Seth Barrett Tillman, U.S. District Court for the Middle District of Alabama, Montgomery, AL, David B. Alden, Paul Crist, Randal S. Baringer, Robert C. Weber, Jones, Day, Reavis & Pogue, Cleveland, OH, Elizabeth P. Kessler, Ivan C. Smith, Scott C. Walker, Jones, Day, Reavis & Pogue, Columbus, OH, Geoffrey T. Wright, Jonathan Redgrave, Patrick L. Hubbard, Paul Sommer Ryerson, Peter John Biersteker, Robert Francis McDermott, Jr., Karen O'Brien Hourigan, Jones Day, Washington, DC, Harold K. Gordon, Jones, Day, Reavis & Pogue, New York City, John Buchanan Williams, William M. Bailey, Collier Shannon Scott, PLLC, Washington, DC, Lisa M. Sheppard, Womble, Carlyle, Sandridge & Rice, PLLC, Winston–Salem, NC, Nicholas N. Nierengarten, Gray, Plant, Mooty, Mooty & Bennett, PA., Minneapolis, MN, Andrew Martin McCormack, William Charles Hendricks, III, King & Spalding, Washington, DC, Dan H. Willoughby, Leign Ann Dowden, King & Spalding, Atlanta, GA, David M. Bernick, Deirdre A. Fox, Douglas G. Smith, Michelle H. Browdy, Stephen R. Patton, Steven D. McCormick, Kirkland & Ellis, Chicago, IL, David Mendelson, David Patrick Sullivan, Dawn D. Marchant, Jason Beckerman, Karen McCartan DeSantis, Kenneth N. Bass, Kirkland & Ellis LLP, Washington, DC, Paul Lamont McDonald, Philadelphia, PA, Rebecca I. Ruby, Goodwin Procter, LLP, Washington, DC, Bruce D. Ryder, J. William Newbold, James M. Cox, Michael B. Minton, Thompson Coburn LLP, Richard Paul Cassetta, St. Louis, MO, Edward Craig Schmidt, Matthew David Schwartz, Thompson Coburn, LLP, Washington, DC, Paige Q. Szajnuk, Thomas A. Duncan, Shook, Hardy & Bacon, Kansas City, MO, Aaron H. Marks, Daniel R. Benson, Leonard A. Feiwus, Marc E. Kasowitz, Kasowitz, Benson, Torres Friedman, L.L.P., New York City, Fred W. Reinke, Clifford Chance Us, LLP, Washington, DC, Julie R. Fischer, Nancy E. Straub, Kasowitz, Benson, Torres Friedman, L.L.P., New York City, Kenneth Anthony Gallo, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Washington, DC, Melodie M. Mabanta, Robinson Woolson, P.A., Baltimore, MD, Michael P.A. Cohen, Washington Lawyers' Committee, Washington, DC, Warren Neil Eggleston, Howrey Simon Arnold & White, LLP, Washington, DC, Demetra Frawley, Mary Elizabeth McGarry, Michael V. Corrigan, Simpson Thatcher & Barlett, New York City, Michael Asher Schlanger, Sonnenschein, Nath & Rosenthal, Washington, DC, Arnon D. Siegel, Lawrence Saul Robbins, Roy T. Englert, Jr., Robbins, Russell, Englert, Orseck & Untereiner, Washington, DC, Bruce G. Sheffler, David L. Wal-

lace, F. John Nyhan, Garyowen P. Morrisroe, Jessica L. Zellner, Timothy M. Hughes, William Salvatore D'Amico, Lawrence Edward Savell, Chadbourne & Parke LLP, New York City, Bruce G. Merritt, David Runtz, Dennis H. Hranitzky, Debevoise & Plimpton, Washington, DC, Joseph P. Moodhe, Steven S. Michaels, Debevoise & Plimpton, New York City, Judah Best, Kevin C. Lombardi, Steven Klugman, Debevoise & Plimpton, Washington, DC, Clausen Jr. Ely, James Alexander Goold, John Vanderstar, Joseph A. Kresse, Keith Allen Teel, Covington & Burling, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

This matter is now before the Court on the Defendants'[1] Motion for Summary Judgment on the Grounds that the Government's RICO Claims Violate Separation of Powers ("Motion"). Upon consideration of the Motion, the Opposition, the Reply and the entire record herein, and for the reasons set forth below, the Defendants' Motion is **denied.**

## I. INTRODUCTION

Plaintiff, the United States of America ("the Government") has brought this suit against Defendants pursuant to Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.[2] Defendants are manufacturers of cigarettes and other tobacco-related entities. The Government seeks injunctive relief and $289 billion[3] for what it alleges to be a four-decade long unlawful conspiracy to intentionally and willfully deceive and mislead the American public. The Government's factual allegations have been described in some detail in prior opinions, and need not be repeated here. See e.g., United States v. Philip Morris Inc., 116 F.Supp.2d 131, 136–138 (D.D.C.2000).

In their Motion, Defendants seek summary judgment on the basis of the separation of powers doctrine. This doctrine reflects the "basic principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another." Loving v. United States, 517 U.S. 748, 757, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). According to the Defendants, the Government is improperly "usurping the legislative function" by bringing this RICO suit. Defs.' Mem. in Supp. at 2. They do not deny that the conduct alleged falls within the scope of RICO. Instead, they argue that Congress has created a distinct regulatory regime for tobacco, one which reserves for Congress itself the power to regulate in this area and that the Government's claims and proposed relief "seriously impinge" on this reserved authority. Defs.' Mem. in Supp. at 9. For the reasons set forth below, Defendants are not

---

**1.** Defendants are Philip Morris USA Inc. (f/k/a Philip Morris Incorporated), R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobacco Company), Lorillard Tobacco Company, Altria Group Inc. (f/k/a Philip Morris Companies, Inc.), British American Tobacco (Investments), Ltd., The Council for Tobacco Research–U.S.A., Inc., The Tobacco Institute, Inc. and The Liggett Group, Inc.

**2.** The Complaint originally contained four claims under three statutes. On September 28, 2000, the Court dismissed Count One (pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651, et seq.) and Count Two (pursuant to the Medicare Secondary Payer provisions of the Social Security Act, 42 U.S.C. §§ 1395y(b)(2)(B)(ii) & (iii)). See United States v. Philip Morris, 116 F.Supp.2d 131 (D.D.C.2000).

**3.** See United States' Preliminary Proposed Findings of Fact at 14.

entitled to summary judgment on this basis.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989). In this Motion we are concerned with issues of law, rather than factual disputes.

## III. ANALYSIS

### A. Tobacco–Specific Legislation

Congress has enacted legislation addressing tobacco and health on at least six separation occasions since 1965. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Through this legislation Congress has created a "distinct scheme to regulate the sale of tobacco products." *Id.* at 157, 120 S.Ct. 1291. For example, in the Federal Cigarette Labeling and Advertising Act ("FCLAA" or "Labeling Act"), 15 U.S.C. §§ 1331–40, Congress mandated the warnings that appear on every package of cigarettes sold in the United States, 15 U.S.C. § 1333. Congress has also, among other things, prohibited the adver-

tisement of tobacco through "any medium of electronic communication," subject to regulation by the Federal Communications Commission, 15 U.S.C. §§ 1335; required the Secretary of HHS to report to Congress concerning the addictive nature of tobacco, 42 U.S.C. § 290aa *et. seq.*, and created incentives for States to regulate the sale of tobacco products to minors, 15 U.S.C. § 300x *et. seq.*

Defendants argue that this tobacco-specific legislation, viewed collectively, comprises a regulatory scheme in which Congress has expressed its intent to reserve to itself alone the authority to regulate tobacco, except where it has made some express delegation of that authority. Therefore, according to Defendants, the Government's RICO claims must be dismissed because they impinge on this exclusive authority.

In a prior motion Defendants argued that certain of the Government's claims came within the exclusive jurisdiction of the FTC and would effectively repeal the tobacco regulatory regime that was purportedly administered by that agency alone. *See* Joint Defs.' Mot. for Partial Summary Judgment on Advertising, Marketing, Promotion and Warning Claims ("FTC Motion"). The court rejected this argument because it found that RICO did not conflict with either the FTC Act or the FCLAA. *United States v. Philip Morris*, 263 F.Supp.2d 72 (D.D.C.2003) ("FTC Opinion"). Defendants' argument in this Motion that the RICO claims infringe on powers reserved exclusively to Congress fails for similar reasons.

### B. In Bringing Its RICO Claims, the Government is Enforcing Legislation Enacted by Congress, Not "Regulating" the Industry Being Sued

It is undisputed that the conduct alleged falls within the reach of RICO and

that the statute has no explicit exemption for tobacco-related entities or conduct.[4] The argument that the Government is usurping the role of the Congress is based, not on the text of RICO, but on the mistaken premise that the claims being brought can properly be described as "regulation" of tobacco. However, Congress has explicitly authorized the Attorney General to bring RICO suits, such as this one, 18 U.S.C. § 1964(b), and Defendants cite no authority for the proposition that when the Government acts pursuant to such authority, it is "regulating." Instead, when the Government sues under RICO, it is enforcing the law and carrying out Congress' intent to ensure that the laws it enacts are complied with. *See INS v. Chadha,* 462 U.S. 919, 954, 103 S.Ct. 2764, 77 L.Ed.2d 317 n. 16 (1983) (when the Attorney General performs his duties pursuant to a statute that delegates authority to him "he does not exercise 'legislative' power" but acts "in his presumptively Art. II capacity").[5]

Agency "regulation" involves, among other things, the issuance of rules of general applicability that have legal force. *See* BLACK'S LAW DICTIONARY 1289 (7th ed.1999) (defining "regulation" as "the act or process of controlling by rule or restriction" or "[a] rule or order, having legal force, issued by an administrative agency" such as "Treasury regulations [which] explain and interpret the Internal Revenue Code"). Here, the Attorney General, through the Department of Justice, is enforcing the law as written by Congress, not generating further rules, interpretative

or otherwise, and not engaging in policymaking. The Department of Justice is exercising the kind of discretion that prosecutors typically exercise in choosing, on a fact-specific, case-by-case basis, which lawsuits to bring. Pursuit of fraud-based claims against tobacco companies simply cannot be equated with the regulation of smoking and health issues attempted by the Federal Drug Administration in 1996 when it issued Regulations for Restricting the Sale and Distribution of Cigarettes and Smokeless Tobacco to Protect Children and Adolescents. 61 Fed.Reg. 4400 (1996).

That Congress may not have envisioned this particular lawsuit, or even RICO's application to this industry, when it enacted RICO, as argued by Defendants, is obviously of no moment because RICO is a statute of general application. *See United States v. Palumbo Brothers, Inc.,* 145 F.3d 850, 868 (7th Cir.1998) ("RICO is a statute of general application, and it is impossible for Congress to anticipate, identify, and define each and every context in which a violation of the listed statutes would qualify as a predicate act in a pattern of racketeering activity.")

Defendants point out that the Government has not alleged that they have failed to comply with any tobacco-specific legislation. Defs.' Mem. in Supp. at 11. From this premise, Defendants conclude that the Government's claims "assume obligations and duties beyond those—and, indeed … inconsistent with those—that Congress

---

**4.** In contrast, in 1995 Congress expressly amended 1964(c) to exempt from civil RICO liability "conduct that would have been actionable as fraud in the purchase or sale of securities." *See* Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67 § 107 (1995).

**5.** Indeed, because it is not considered an administrative agency when it enforces statutes, the Department of Justice is not entitled to *Chevron* deference in interpreting statutes that it enforces. *See Trans Union Corp. v. FTC,* 81 F.3d 228, 230–31 (D.C.Cir.1996) (citing *Crandon v. United States,* 494 U.S. 152, 177, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)) (Scalia, J., concurring).

chose to impose." *Id.* There are two fundamental weaknesses with this argument.

■ First, the Government seeks to enforce RICO; thus, any obligations imposed by that statute were imposed by the Congress itself. RICO may overlap with tobacco-specific legislation but, as this Court observed in the FTC Opinion, there is a duty to enforce overlapping federal statutes, as long as they are capable of co-existence. 263 F.Supp.2d at 76 (citing *FCC v. NextWave Personal Communications, Inc.*, 537 U.S. 293, 304, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003)).

> RICO is a broad statute that often overlaps with more specifically targeted laws and regulations.... The relevant issue is not whether one of two overlapping statutes is more specific than the other, but whether the statutes actually conflict with one another. So long as they do not, both must be given effect.

*Id.* at 77 (internal citations omitted). Overlapping federal statutes must each be given effect "in the absence of inherent conflict." *Id.* at 76 (citing *Nextwave*, 537 U.S. at 304, 123 S.Ct. 832). Defendants have not even attempted to demonstrate any concrete inherent conflict between RICO and any tobacco-specific legislation.

Second, Defendants suggest that imposing liability on tobacco-related entities beyond the requirements of tobacco-specific legislation impermissibly upsets "the balance struck" by Congress. Defs.' Mem. in Supp. at 12. However, this theory is inconsistent with the holding of *Cipollone v. Liggett Group*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion). In *Cipollone*, the Supreme Court held that certain state law claims against tobacco manufacturers were not preempted by the Labeling Act. In the FTC Opinion, this Court noted that "*Cipollone* involved the same 'comprehensive' regulatory regime at issue here" and that the Government's claims in this case are "virtually identical" to the claims held not preempted in that case. *United States v. Philip Morris, Inc.*, 263 F.Supp.2d 72 at 80.[6]

Defendants are correct that *Cipollone* involved state law claims, and thus, technically, addressed questions of federalism and preemption, not separation of powers. Defs.' Mem. in Supp. at 14 n. 11. However, in the FTC Opinion, the Court rejected Defendants' arguments that the Government's RICO claims would be disruptive to the FTC's administrative responsibilities because they "fail[ed] to explain how that can be the case when the Supreme Court has already concluded in *Cipollone* that state law claims based on the same duties will not have that adverse effect." 263 F.Supp.2d at 80. Similarly here, they do not offer any reason to think that federal RICO claims will so interfere with the tobacco regulatory regime established by Congress as to violate the separation of powers doctrine when the state law counterparts of these claims are not preempted by that same regime.

### C. Defendants' Reliance on *FDA v. Brown & Williamson* Is Misplaced

Defendants rely heavily on *Brown & Williamson*. In that case, the Supreme

---

**6.** Defendants also argue that the relief sought by the Government, such as disgorgement, amounts to an attempt to regulate their industry. According to Defendants, in the absence of any decision by Congress to impose such obligations, "[i]t would be disingenuous to describe this as anything other than 'regulation.'" Defs.' Mem. in Supp. at 14. However, RICO itself authorizes broad equitable relief, including disgorgement. Again, Defendants point to no case holding that pursuit of equitable relief under RICO is "regulation." Nor do they point to any inherent conflict between the relief sought and any tobacco-specific legislation.

Court held that the FDA lacks authority to regulate tobacco products. The Court found that FDA jurisdiction over tobacco would be "inconsistent with the intent that Congress has expressed in the FDCA's [Food Drug and Cosmetic Act's] overall regulatory scheme and in the tobacco-specific legislation" described above. 529 U.S. at 125, 120 S.Ct. 1291. According to Defendants, *Brown & Williamson* "repeatedly makes clear that the regulatory scheme Congress has created for tobacco products reflects Congress' balancing of the health and economic concerns raised by tobacco products" and that Congress has "retained for itself the sole authority" to regulate cigarettes. Defs.' Mem. in Supp. at 6.

Defendants' interpretation of *Brown & Williamson* is overbroad and their reliance on that case is misplaced for several reasons.

First, there was no question in *Brown & Williamson* about whether the FDA was seeking to "regulate" tobacco. That case arose out of a challenge to the FDA's assertion of jurisdiction over tobacco when it initiated a notice and comment rulemaking by issuing proposed regulations. 529 U.S. at 125, 120 S.Ct. 1291 ("in 1996, the [FDA] ..asserted jurisdiction to regulate tobacco products."). Here, as discussed above, *supra*, pp. 71–73, the Government is not seeking to assert any such regulatory authority over tobacco. Therefore, the RICO claims in this case do not impinge on Congress' reservation to itself of the authority to regulate tobacco.

Second, the Supreme Court found that the exercise of jurisdiction by the FDA over tobacco created the kind of irreconcilable conflict between the FDCA and tobacco-specific legislation that does not exist between RICO and the FCLAA, or other

tobacco-specific legislation. Specifically, the FDA had "exhaustively documented that tobacco products are unsafe, dangerous and cause great pain and suffering from illness." *Id.* at 134, 120 S.Ct. 1291 (internal quotation omitted). The Supreme Court emphasized that these findings "logically impl[ied]" under the standards of the FDCA that "the FDA would be required to remove" tobacco from the market. *Id.* at 135, 120 S.Ct. 1291. A ban on tobacco would contradict Congress' clear intent because the "collective premise" of the tobacco-specific legislation Congress has enacted has been that tobacco "will continue to be sold in the United States." *Id.* at 139, 120 S.Ct. 1291. Here, Defendants do not claim that the application of RICO to tobacco-related entities logically implies a ban on tobacco; nor does the Government seek such a ban as part of its requested relief. Defendants fail to point to any other concrete conflict between RICO and tobacco-specific legislation.

Third, in *Brown & Williamson*, the Supreme Court considered the fact that in its tobacco-specific legislation, Congress "acted against the backdrop of the FDA's consistent and repeated statements that it lacked authority under the FDCA to regulate tobacco", and that Congress had "considered and rejected bills that would have granted the FDA such jurisdiction." *Id.* at 144, 120 S.Ct. 1291. Here, the Defendants do not claim that the Government has disavowed its authority to bring RICO claims against tobacco-related entities or that Congress has considered and rejected any bills to grant such authority.

For all these reasons, Defendants' reliance on *Brown & Williamson* is misplaced.[7]

---

7. Defendants' reliance on the analysis used by this Court to dismiss the Government's claims pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651, *et seq.*, ("MCRA"), is simi-

### D. Unsuccessful Legislative Proposals Are Not Probative of Congressional Intent Regarding the Scope of RICO

Defendants also argue that overlap between some of the relief requested by the Government and certain legislative tobacco proposals that Congress has considered and rejected demonstrates that Congress did not intend to permit the Government to bring these claims. Defendants place special emphasis on the proposed National Tobacco Policy and Youth Smoking Reduction Act ("McCain Bill"), S. 1415, 105th Cong. (1997), which "encompassed various grants, funds, and other programs to restructure the tobacco industry." Defs.' Mem. in Supp. at 8. However, even if some of these bills related to topics generally at issue in this case, such as youth smoking or the nicotine yields of cigarettes, these unsuccessful legislative efforts do not demonstrate that Congress intended to preclude these RICO claims.

The Supreme Court has cautioned against reliance on legislative proposals which have not been enacted. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ("failed legislative proposals are a 'particularly dangerous ground on which to rest an interpretation of a prior statute.'") (quoting *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990)). Here, reliance on such failed proposals would be particularly unwarranted because none of them address the Attorney General's authority to bring RICO claims against tobacco-related entities. In addition, Defendants do not claim that any of the proposals were put forth as remedies for alleged mail or wire fraud. Therefore, there is no justification for concluding that because Congress has failed to enact certain legislative proposals, it has spoken directly to the question at issue in this Motion.[8]

---

larly misplaced. *See Philip Morris*, 116 F.Supp.2d at 143–144. In that opinion, the Court relied in part on *Brown & Williamson* in concluding that MCRA was never intended to be used to recover payments incurred under Medicare or the Federal Employees Health Benefits Acts ("FEHBA"). However, there are several differences between RICO and the features of MCRA relied upon in the Court's opinion.

First, the legislative history specifically identified certain statutes covered by MCRA, but was conspicuously silent as to FEHBA. *Id.* at 141, 120 S.Ct. 1291. Here, Defendants have not pointed to any similar indication that RICO applies to only certain kinds of racketeering activity.

Second, the Health Care Financing Administration ("HCFA"), the agency charged with administering MCRA, had "consistently indicated that it did not understand MCRA to cover Medicare or FEHBA expenses." *Id.* at 144, 120 S.Ct. 1291. Several agencies had explicitly concluded that MCRA did not provide the Government a cause of action to recover Medicare costs. *Id.* at 143, 120 S.Ct. 1291. In addition, it was reasonable to expect HCFA to promulgate regulations that "would formalize and facilitate the ... recovery of Medicare or FEHBA costs" under MCRA. *Id.* at 143, 120 S.Ct. 1291. The Court found the absence of such regulations to be indicative that MCRA was not intended to apply in that way.

RICO, in contrast, is a much broader statute, the application of which does not require the promulgation of regulations. The Attorney General has the authority to prosecute racketeering generally. Defendants do not point to any evidence that the Department of Justice has ever taken the position that it lacked authority to prosecute all racketeering conduct encompassed within RICO's scope, or that it lacked authority as to tobacco-related entities in particular.

8. Defendants rely on *Brown & Williamson* for the propriety of using failed legislative proposals to infer Congress' intent, noting that the Supreme Court discussed proposed bills that would have given the FDA jurisdiction

## IV. CONCLUSION

Defendants are not entitled to summary judgment on the basis of the separation of powers doctrine for several related reasons.

First, in bringing these RICO claims pursuant to an explicit statutory grant of authority, the Government is enforcing the law that Congress passed, not usurping its legislative function.

Second, as a matter of law, Defendants have failed to show that these claims are somehow inconsistent with the regulatory regime governing tobacco that Congress has established, a regime that the Supreme Court has held can accommodate similar state law claims. Defendants do not deny that the conduct alleged in this case falls squarely within the reach of RICO. Nor have they pointed to any concrete inherent conflict between RICO and any tobacco-specific legislation.

Third, overlap between some of the relief proposed by the Government in this case and unsuccessful legislative proposals that addressed neither RICO nor allegations of mail or wire fraud fails to demonstrate Congressional intent to preclude these claims.

For all these reasons, Defendants are not entitled to summary judgment on the basis of the separation of powers doctrine. The Supreme Court observed in *Cipollone* that "Congress offered no sign that it wished to insulate cigarette manufacturers from longstanding [state] rules governing fraud." 505 U.S. at 529, 112 S.Ct. 2608. Here, Defendants do not point to any sign that Congress wished to insulate them from federal statutory rules governing fraud. Therefore, the Government must have an opportunity to prove its case at trial.

An **Order** will accompany this opinion.

### ORDER # 510

This matter is now before the Court on the Defendants'[1] Motion for Summary Judgment on the Grounds that the Government's RICO Claims Violate Separation of Powers ("Motion"). Upon consideration of the Motion, the Opposition, the Reply and the entire record herein, and for the reasons set forth in the accompanying Memorandum Opinion, the Defendants' Motion is **denied.**

over tobacco. Defs.' Mem. in Supp. at 8 (citing *Brown & Williamson,* 529 U.S. at 144, 120 S.Ct. 1291). However, the Supreme Court explicitly disavowed reliance on these unsuccessful legislative efforts. 529 U.S. at 155, 120 S.Ct. 1291 ("We do not rely on Congress' failure to act—its consideration and rejection of bills that would have given the FDA this authority—in reaching this conclusion."). Instead, as discussed above, the Supreme Court found FDA jurisdiction "incompatible" with "the substance of Congress' regulatory scheme." *Id.* at 156, 120 S.Ct. 1291.

Moreover, in *Brown & Williamson,* the existence of FDA jurisdiction was both the subject of the failed legislative proposals and the precise question before the Court. Here, in contrast, the failed legislative proposals do not address RICO claims against tobacco-related entities.

1. Defendants are Philip Morris USA Inc. (f/k/a Philip Morris Incorporated), R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobacco Company), Lorillard Tobacco Company, Altria Group Inc. (f/k/a Philip Morris Companies, Inc.), British American Tobacco (Investments), Ltd., The Council for Tobacco Research–U.S.A., Inc., The Tobacco Institute, Inc. and The Liggett Group, Inc.