Carolyn H. MCKENZIE, Appellant,

v.

Anthony J. PRINCIPI, Secretary of
Veterans Affairs, Appellee.

No. 01–5271.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 20, 2002.

Before HENDERSON, TATEL and
GARLAND, Circuit Judges.

### JUDGMENT

PER CURIAM.

This case was considered on the record
from the United States District Court for
the District of Columbia and on the briefs
and arguments by counsel. For the rea-
sons set out in the accompanying memo-
randum, it is

ORDERED that the district court's
opinion and order of July 2, 2001 be af-
firmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

### MEMORANDUM

Carolyn H. McKenzie seeks reversal of the district court's July 2, 2001 opinion and order granting summary judgment for the defendant, Anthony J. Principi, Secretary of Veterans Affairs, on McKenzie's claims of gender and race discrimination. McKenzie, a black female employee of the Department of Veterans Affairs ("DVA"), brought this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, alleging that she had been discriminated against on the basis of sex and race by not being promoted to the GS–13 grade level.

As to McKenzie's sex discrimination claim, the district court held that McKenzie failed to establish a *prima facie* case of discrimination because she failed to demonstrate that similarly situated male employees were promoted to the GS–13 grade level during the time she was eligible for a similar promotion. The district court further held that, even if McKenzie had established a *prima facie* case of sex discrimination, she nonetheless failed to discredit the DVA's legitimate, non-discriminatory reason for her non–promotion—reorganizations within the DVA—as mere pretext. With respect to McKenzie's race discrimination claim, the district court held that McKenzie failed to estab-

lish a *prima facie* case of discrimination because she failed to show that any similarly situated non-black employees were promoted to the GS–13 level during the time she was eligible for a similar promotion.

On appeal, McKenzie argues that the district court erred in granting the defendant's motion for summary judgment on her claim of sex discrimination.[1] Because McKenzie offered no evidence demonstrating that the defendant's articulated reason for her non-promotion was pretextual, leaving no genuine issue of material fact in dispute, we affirm the district court's grant of summary judgment.

### I.

McKenzie began working at the DVA in 1993 as a computer specialist at the GS–11 grade level. JA 31. This position was a "career ladder" position ending at the GS–12 grade level. Pl.'s Ex. 2, McCully Dep. at 21 [JA 119]. An employee in a career ladder position is not required to compete with others in order to obtain a promotion to the next GS grade level until the employee attains the so-called "journeyman" level, *i.e.*, the level at which the career ladder ends. Def. Ex. 14, Walper Aff. at 8. In March 1994, the DVA promoted McKenzie to operations shift supervisor, a GS–12 position "targeted" for the GS–13 grade level. Def.'s Ex. 1, Pl.'s Dep. at 27–29 [JA 131–33]; Pl.'s Ex. 2, McCully Dep. at 29–30 [JA 122–23]. Unlike a career ladder position, a targeted position requires the incumbent employee to compete with other employees in order to obtain a promotion to the targeted grade level.

---

1. McKenzie does not discuss her race discrimination claim in either of her briefs before the court. Thus, by failing to brief the issue, McKenzie has waived her race discrimination claim. *See Democratic Cent. Comm. of Dist. of Columbia v. Washington Metro.* *Area Transit Comm'n,* 485 F.2d 786, 790 n. 16 (D.C.Cir.1973)(where petitioner offers "no argument" whatsoever in support of certain issues on appeal, court will decline to consider them).

Pl.'s Ex. 2, McCully Dep. at 29–30 [JA 122–23]. McKenzie's department, the Information Telecommunications Systems Service ("ITSS"), has a policy of posting targeted promotions for all employees, even if an incumbent employee already performs that job at a lower GS grade level. Pl.'s Ex. 2, McCully Dep. at 24–25, 29 [JA 120–22]. If the incumbent fails to win the promotion, he is given different job responsibilities. *Id.* at 25, 29 [JA 120, 122].

Beginning in October 1994, the DVA underwent a series of reorganizations designed to streamline the organization's operations and to reduce its personnel costs. JA 72–98. The reorganizations affected computer operations throughout the DVA and led to a reduction in ITSS's activities. Def.'s Ex. 10, Pertino Dep. at 44. As a result, the DVA downsized ITSS from over 100 employees (as of 1993) to 45 employees (as of 2000). Def.'s Ex. 1, Pl.'s Dep. at 133 [JA 148].

McKenzie initially worked with four other operations shift supervisors. Def.'s Ex. 1, Pl.'s Dep. at 30. When McKenzie started her position as an operations shift supervisor, before the mid–1990s reorganizations, three of McKenzie's coworkers—Arthur Brooks, Reginald Sanders and Andy Stasny—had already attained the GS–13 grade level through the normal competition process. *Id.* Other than McKenzie, only Wade Wallace worked as an operations shift supervisor at the GS–12 grade level. *Id.* After McKenzie began working as an operations shift supervisor, a sixth individual—Allan Bland—laterally transferred into ITSS as a GS–13 operations shift supervisor. Pl.'s Ex. 8, Bland Aff. at 3. Like Brooks, Sanders and Stasny, Bland had obtained the GS–13 grade level through the competition process, but did so in another DVA department. *Id.* at 4. Brooks, Sanders, Wallace and Bland are all black males. Def.'s Ex. 1, Pl.'s Dep. at 30, 48. Stasny is a white male.[2] *Id.* at 30.

In March 1995, McKenzie first became eligible to compete for a promotion to the GS–13 grade level. *Id.* at 98 [JA 138]. When McKenzie approached her immediate supervisor, Joe Walper, to inquire about a promotion, however, Walper told McKenzie that his "hands [were] tied" because of an informal hiring freeze begun as a result of the reorganizations. *Id.* at 101 [JA 141]. McKenzie's team leader, Sanders, also approached Walper to see if McKenzie could be promoted to the GS–13 grade level, Def.'s Ex. 11, Sanders Dep. at 17–18, but, according to McKenzie, Walper repeated that he could do nothing about McKenzie's situation. Def.'s Ex. 1, Pl.'s Dep. at 101, 106–07, 111–12 [JA 141–45].

Walper's immediate supervisor, Kenneth Thomas, disagreed with Walper about promoting McKenzie. Pl.'s Ex. 7, Thomas Aff. at 10 [JA 114]. Indeed, Thomas believed that McKenzie could have been promoted to the GS–13 grade level if Walper had in fact recommended it to him. *Id.* According to Thomas, however, Walper never asked him about promoting McKenzie. *Id.* Thomas and Sanders then approached ITSS's Director of Information Technology and Administration, Lorraine Pertino, about the possibility of promoting McKenzie. Def.'s Ex. 10, Pertino Dep. at 29 [JA 151].

---

**2.** At the time of McKenzie's lawsuit, only four operations shift supervisors remained: Bland, Brooks, McKenzie and Sanders. Stasny retired sometime in 1995, Def.'s Ex. 1, Pl.'s Dep. at 46 [JA 134], while Wallace was transferred from ITSS to another DVA department in either 1995 or 1996. *Compare* Def.'s Ex. 1, Pl.'s Dep. at 46 (Wallace transferred in 1996) *with* Def. Ex. 14, Walper Aff. at 10 (Wallace transferred in 1995).

Upon looking into McKenzie's personnel file, Pertino informed Thomas and Sanders that McKenzie's career ladder ended at the GS–12 grade level and that the position description to which she had been assigned was "clearly marked 'no known promotion potential.'" *Id.* at 34 [JA 156]. Thus, according to Pertino, McKenzie would have to apply and compete for a GS–13 promotion. *Id.* at 45. From the time McKenzie became eligible for a GS–13 promotion in March 1995 until she filed her lawsuit in 1999, however, there was no GS–13 vacancy at ITSS for which McKenzie could have applied. Def.'s Ex. 1, Pl.'s Dep. at 101–04, 114; Def.'s Ex. 10, Pertino Dep. at 25. A GS–13 team leader position did become available after the commencement of McKenzie's lawsuit. Def.'s Ex. 1, Pl.'s Dep. at 113–14; Def.'s Ex. 10, Pertino Dep. at 25–26, 48. Although McKenzie applied for the position, ITSS awarded the job to Celeste Mathews, a black female. Def.'s Ex. 1, Pl.'s Dep. at 113–14; Def.'s Ex. 10, Pertino Dep. at 25–26, 48. McKenzie does not challenge Matthews's promotion on appeal. Br. for Appellant at 3 n. 1.

## II.

We analyze a sex discrimination claim under Title VII using the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802. If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the employer meets its burden, the plaintiff must then demonstrate that the employer's stated reason was in fact a mere pretext for discrimination. *Id.* at 804. A plaintiff that offers only "mere speculation[ ]" to refute the employer's proffered legitimate, non-discriminatory reason, however, fails to create a genuine issue of material fact to avoid summary judgment. *Brown v. Brody,* 199 F.3d 446, 459 (D.C.Cir.1999).

■ Even assuming that McKenzie established a *prima facie* case of sex discrimination, the district court properly granted summary judgment to the defendant because McKenzie failed to raise a genuine issue of material fact as to whether the DVA's articulated reason for her non-promotion was pretextual. *See McDonnell Douglas,* 411 U.S. at 804. Specifically, McKenzie failed to provide any evidence undermining Pertino's testimony that, as a result of the DVA's reorganizations, a sufficient workload did not exist to warrant promoting McKenzie to the GS–13 grade level.

**A.** On appeal, McKenzie emphasizes that she performs the same work that her GS–13 male colleagues perform and that the DVA refused to grant her the promotion opportunity it had previously afforded those men. These facts alone do not discredit, however, the legitimate, non-discriminatory reason proffered by the DVA, *i.e.,* that its decision not to promote McKenzie to the GS–13 grade level stemmed from the structural reorganizations that had taken place within the department. According to Pertino, the female director of ITSS, the DVA did not give McKenzie the opportunity to compete for a GS–13 position because, at the time McKenzie became eligible to compete for such a position, the work performed by operations shift supervisors did not support the GS–13 grade level. Def.'s Ex. 10, Pertino Dep. at 52. Nothing in the record contradicts Pertino's testimony.

As the record makes clear, McKenzie's male colleagues obtained their GS–13 pro-

motions before the mid–1990s reorganizations, at a time when the work performed by operations shift supervisors supported a GS–13 grade level. *Id.* at 44. After the reorganizations, however, the DVA reduced ITSS's computing responsibilities and, as a result, the duties of each operations shift supervisor likewise diminished. *Id.* at 40. Although the operations shift supervisor position no longer supported the GS–13 grade level, ITSS did not demote those employees who had attained the GS–13 grade level before the reorganizations. *Id.* at 40, 44. Should a GS–13 employee choose to leave ITSS, however, the DVA would not replace the departing employee with another GS–13 employee, but instead either fill the position at a lower grade level or eliminate the position altogether. *Id.* at 44. Even McKenzie acknowledged that, if she departed ITSS, the DVA would likely phase out her current position. Def.'s Ex. 1, Pl.'s Dep. at 104. Accordingly, McKenzie failed to demonstrate that the DVA's articulated reason for her non-promotion was a mere pretext for sex discrimination.

■ **B.** Contrary to McKenzie's assertions, Bland's transfer into ITSS did not undermine Pertino's testimony that, at the time McKenzie became eligible for a GS–13 promotion, the work performed by operations shift supervisors did not support the GS–13 grade level. Indeed, the record indicates that the DVA transferred Bland into ITSS *before* McKenzie became eligible for a GS–13 promotion in March 1995. In his February 24, 1998 affidavit, Bland stated that he had been working at ITSS for

"the last three or four years." Pl.'s Ex. 8, Bland Aff. at 3. Bland further declared that, at the time of his transfer, Jeannie McCully served as ITSS division chief.[3] *Id.* Because McCully—by her own admission—left her position as ITSS division chief in November 1994, Bland had to have transferred into ITSS before November 1994, four months before McKenzie became eligible for a GS–13 promotion. Pl.'s Ex. 4, McCully Aff. at 6. Bland's transfer into ITSS thus failed to demonstrate that the DVA's legitimate, non-discriminatory reason for its non-promotion of McKenzie was pretextual.

---

3. In a deposition taken nearly two years after the date of his affidavit, Bland again testified that he had been working in his current position "three or four years." Def. Ex. 13, Bland Dep. at 5. Although Bland's response necessarily (because of the passage of time) conflicts with his earlier statement, Bland subsequently indicated in his deposition that

McCully interviewed him for the ITSS position. *Id.* at 9. Because it is undisputed that McCully departed ITSS in November 1994, Pl.'s Ex. 4, McCully Aff. at 6, Bland's deposition testimony simply failed to account for the interval between his affidavit and his deposition.