Oscar E. MONCADA, Plaintiff,

v.

Mary E. PETERS, Secretary, United States Department of Transportation,[1] Defendant.

Civil Action No. 05–0470 (PLF).

United States District Court, District of Columbia.

Sept. 29, 2008.

---

1. The complaint named Norman Y. Mineta, former Secretary of the United States Department of Transportation, as the party defendant. The Court now substitutes Mary E. Peters, Mr. Mineta's successor, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Lee Boothby, Washington, DC, for Plaintiff.

Beverly Maria Russell, U.S. Attorney's Office for D.C., Washington, DC, for Defendant.

---

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on (1) defendant's renewed motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and (2) plaintiff's motion to strike certain exhibits attached to defendant's renewed motion.[2] The Court will deny plaintiff's motion to strike and grant defendant's renewed motion for summary judgment.

## I. BACKGROUND

This is an employment discrimination case brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). Plaintiff Oscar E. Moncada alleges that the Federal Aviation Administration, an agency within the United States Department of Transportation, unlawfully discriminated against him based on his national origin (Hispanic), sex (male) and age (48 at the time the amended complaint was filed) by failing to hire him for ten positions for which he applied between 1995 and 2002. *See* Complaint ¶ 4 ("Compl.").[3]

The FAA denies the allegations and has moved for summary judgment. The gist of

---

[2] The papers submitted in connection with this matter include: Defendant's Renewed Motion for Summary Judgment ("Mot.S.J."); Plaintiff's Response and Memorandum of Points and Authorities in Opposition to Defendant's Renewed Motion for Summary Judgment ("Opp.S.J."); Plaintiff's Motion to Strike ("Mot.Strike"); and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Motion to Strike ("Reply S.J."). This is the defendant's second attempt to obtain summary judgment. The Court denied its first motion because it was not properly supported and because the parties had not yet engaged in discovery. *See Moncada v. Peters,* Civil Action No. 05–0470, Memorandum Opinion and Order at 4–5 (D.D.C. March 15, 2006).

[3] Mr. Moncada applied for two Aviation Safety Inspector positions in the mid–1990s. *See* Mot. S.J., Ex. 3, Letter from Tami L. Wright at 2 (Jan. 29, 2003). Mr. Moncada also applied for the following eight positions between 2000 and 2002 (identified by position title and the last five digits of the corresponding vacancy announcement): Management and Program Analyst (63365); International Aviation Operations Specialist (63281); Aviation Safety Inspector (61908); Program Management Specialist (64739); Aviation Safety Inspector (64940); Aviation Safety Inspector (65074); Computer Specialist (59518); and Aviation Safety Inspector (59858). For the sake of clarity, the Court will refer to the post–2000 positions solely by the last five digits of the corresponding vacancy announcement.

The Court need not address Mr. Moncada's claims with respect to the two pre–2000 positions because they are clearly untimely. There is no genuine dispute that Mr. Moncada first contacted an EEO counselor on or about August 6, 2002, *see* Mot. S.J., Ex. 11, Memorandum from EEO Counselor Russell O. Green (August 19, 2002), nor is there any genuine dispute that Mr. Moncada should have had a reasonable suspicion that he may have been discriminated against with respect to the pre–2000 positions long before August of 2002. *See Coghlan v. Peters,* 555 F.Supp.2d 187, 200–01 (D.D.C.2008). The Court therefore grants summary judgment in favor of the FAA with respect to all of Mr. Moncada's claims based on his non-selection for the two pre–2000 positions.

the FAA's argument is that it had legitimate, non-discriminatory reasons for not selecting Mr. Moncada, and that Mr. Moncada has failed to identify any substantial evidence to the contrary. *See, e.g.,* Mot. S.J. at 14–20. In response, Mr. Moncada has filed (1) a motion to strike most of the exhibits attached to the FAA's renewed motion for summary judgment, and (2) a formal opposition to the FAA's renewed motion for summary judgment. In his motion to strike, Mr. Moncada argues that the Court should strike the FAA's exhibits 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 because they have not been satisfactorily identified, explained or authenticated and because they include inadmissible hearsay evidence. *See generally* Mot. Strike. In his opposition brief, Mr. Moncada incorporates the argument from his motion to strike and contends that the FAA cannot obtain summary judgment because its renewed motion relies solely on inadmissible exhibits. *See* Opp. S.J. at 2. In the alternative, Mr. Moncada asserts that summary judgment for the FAA is inappropriate because there is sufficient evidence for a reasonable jury to conclude that the FAA failed to hire him for discriminatory reasons. *See id.* at 3–15.

## II. SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C.Cir.2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect

the summary judgment determination." *Holcomb v. Powell,* 433 F.3d at 895 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *Holcomb v. Powell,* 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Mastro v. Potomac Electric Power Co.,* 447 F.3d 843, 849–50 (D.C.Cir.2006); *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1288 (D.C.Cir.1998) *(en banc); Washington Post Co. v. Dep't of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters,* 475 F.3d 360, 363 (D.C.Cir.2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). He is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. 2505; *see Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("[W]here the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.' ") (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims." *Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 845 (D.C.Cir.2001).

## III. THE AGENCY HAS CARRIED ITS INITIAL BURDEN

Mr. Moncada argues that the FAA's renewed motion for summary judgment must be denied because the agency "has totally failed to establish, by [its] filing, the absence of a genuine issue." Opp. S.J. at 1. The agency has failed in this regard, says Mr. Moncada, because—for reasons set forth in his motion to strike—nearly all of the exhibits on which the agency's renewed motion relies are inadmissible. *Id.*[4] The Court rejects this argument for two reasons.

First, Mr. Moncada appears to believe that the FAA may carry its initial burden of production only by coming forward with admissible evidence affirmatively demonstrating the absence of any genuine disputes. *See, e.g.,* Mot. Strike at 2 ("Defendant by not submitting admissible evidence as part of his motion or to support his Points and Authorities has failed to carry his initial burden of production."). He is incorrect.

Rule 56 contains "no express or implied requirement" that the movant "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548; *see* FED.R.CIV.P. 56(a), (b). As a result, when the nonmoving party (here, Mr. Moncada) bears the ultimate burden of proof at trial on a dispositive issue or issues, the moving party (here, the FAA) may carry its initial burden on summary judgment by doing no more than "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. 2548; *see* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D,

---

4. Specifically, Mr. Moncada contends that the FAA's exhibits 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 are inadmissible. Exhibits 2 and 11 are memoranda from EEO counselors, dated October 24, 2002 and August 19, 2002, respectively. Both state that Mr. Moncada first sought EEO counseling in August 2002 and explain the nature of his claims. Exhibit 4 is a memorandum from FAA employee Alfreda Terrell, dated March 26, 2003, stating that "Mr. Moncada's experience as minimally described in his application did not give enough evidence of experience that he could ... successfully perform" the duties of position 63365. Exhibit 5 is a memorandum from FAA employee Hattie Higgins–Greene, dated July 15, 2003, stating that Mr. Moncada did not submit certain application materials for position 63281 and was not referred to the selecting official for that position. Exhibit 6 is a document entitled "Qualification Record"

which appears to show that the FAA found Mr. Moncada unqualified for position 61908. Exhibit 7 is a document entitled "Closeout Checklist," dated October 10, 2002, indicating that the FAA made no selection for position 64739. Exhibit 8 is a document entitled "Headquarters Merit Selection Certificate," indicating that Mr. Moncada ranked 13 out of 15 applicants for position 64940. Exhibit 9 is another "Closeout Checklist" document, dated October 10, 2002, indicating that the FAA made no selection for position 65074. Exhibit 10 is a document entitled "Qualifications Worksheet," indicating that Mr. Moncada was found not qualified for position 59518. Exhibit 12 is a document entitled "Promotion Plan Record," which, according to the FAA, *see* Reply S.J., Ex. 21, Affidavit of Paulette Randolph ¶ 3 (April 17, 2008), indicates that the FAA has no record of Mr. Moncada applying for position 59858.

§ 2727 at 474 (1998); 11 Moore's Federal Practice § 56.13[1] at 56–138 (3d ed.2002). In such cases, a movant's motion for summary judgment is "properly made and supported," Fed.R.Civ.P. 56(e)(2), when the movant

> inform[s] the district court of the basis for its motion, and identif[ies] those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c)).

The FAA has done precisely what Rule 56 requires: It has pointed out to this Court that there is an absence of evidence in the record to support plaintiff's case and thus that there is no genuine issue of material fact. *See, e.g.*, Mot. S.J. at 14–16 (citing Mr. Moncada's deposition to argue that his "claims are essentially based on a 'belief' that he was discriminated [against], and nothing more"). Thus, the agency has carried its initial burden of production. *See Celotex Corp. v. Catrett*, 477 U.S. at 329, 106 S.Ct. 2548 (Brennan, J., dissenting) (agreeing with the majority that the movant need not "provide affirmative evidence disproving the plaintiff's case" to carry its initial burden of production). Once the movant carries its initial burden in this manner, the burden then shifts to the nonmovant to demonstrate that there *are* genuine issues of material fact in dispute requiring a trial. As discussed below, this plaintiff has not done that.

Second, the attacks on the FAA's exhibits set forth in Mr. Moncada's motion to strike are not persuasive. Mr. Monca-da makes two primary arguments in his motion to strike. First, he argues that exhibits 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 lack sufficient evidence of authenticity (under Rule 901 of the Federal Rules of Evidence) and are not self-authenticating (under Rule 902 of the Federal Rules of Evidence); thus, barring further proof of authenticity and perhaps further identification and explanation, they must be considered irrelevant for summary judgment purposes. *See* Mot. Strike at 4–6.[5] Second, he argues that these exhibits contain hearsay and therefore are not admissible. *See id.* at 8.

■ Exhibits 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 should not be stricken pursuant to Rules 901 and 902 of the Federal Rules of Evidence. Rule 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R.Evid. 901. The proponent need only offer proof sufficient for a reasonable factfinder to conclude that the evidence in question is what the proponent says it is. *See United States v. Safavian*, 435 F.Supp.2d 36, 39–40 (D.D.C.2006). Federal Rule of Evidence 901(b)(7) "permits authentication of documents that purport to be public records, reports, statements, or data compilations by evidence that they come from the public office where items of that nature are kept." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 901.10[2] at 901–89 (2008). Here, the FAA has authenticated all of the exhibits at issue by way of certifications from the relevant custodians. *See* Reply S.J., Ex. 18, Certification of Tami L.

---

5. "[A]uthentication and identification represent a special aspect of relevance. This is so because evidence cannot have any probative value unless it actually is what it is purported to be." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 901.02[2] at 901–11 (2008).

Wright (Dec. 12, 2005) (attesting to authenticity of exhibits 2, 3, 4, 5, 7, 8 and 11); *id.*, Ex. 20, Certification of Hattie Higgins–Greene (attesting to authenticity of exhibits 6, 9, 10 and 12). In addition, the FAA has provided affidavits from knowledgeable employees that identify and explain all of the exhibits that are not self-explanatory. *See id.*, Ex. 19, Affidavit of Esra Özben (March 14, 2008) (exhibits 7, 8 and 9); *id.*, Ex. 21, Affidavit of Paulette Randolph (April 17, 2008) (exhibits 10 and 12); *id.*, Ex. 22, Affidavit of Greg J. Morgan (April 21, 2008) (exhibit 6).[6] These documents support a finding that the exhibits at issue are what the FAA says they are and mean what the FAA says they mean, and Mr. Moncada has cited no reason to find otherwise.

■ Nor should the exhibits be stricken because they include hearsay. Rule 803(8) excepts from the hearsay prohibition "[r]ecords, reports, statements, or data compilations, *in any form*, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ... unless the sources of information or other circumstances indicate lack of trustworthiness." FED.R.EVID. 803(8) (em-

phasis added).[7] All of the exhibits at issue fall within one or both of these categories, and nothing about the exhibits themselves or the circumstances of this case indicate a "lack of trustworthiness." The Court therefore will not strike the exhibits on hearsay grounds.

In short, the Court rejects (1) all of the arguments set forth in Mr. Moncada's motion to strike, and (2) the argument in Mr. Moncada's opposition to defendant's summary judgment motion that depends on the arguments set forth in his motion to strike—that is, the argument that the agency has failed to submit admissible evidence in support of its renewed motion and therefore has failed to carry its initial burden of production. Thus, the Court will deny Mr. Moncada's motion to strike, and turn to his remaining arguments for denying the FAA's renewed motion for summary judgment.

## IV. THE AGENCY IS ENTITLED TO SUMMARY JUDGMENT

### A. Framework

Mr. Moncada asserts that the FAA violated Title VII by failing to hire him because of his national origin and his sex. *See* Compl. ¶¶ 11, 17.[8] He also asserts

---

**6.** Thus, Mr. Moncada is wrong to argue that the FAA's renewed motion suffers from the same defects as the original. *See* Mot. Strike at 9. The main problem with the agency's original motion was the lack of any evidence—by way of deposition, affidavit, or declaration—identifying and explaining the agency's supporting exhibits. *See Moncada v. Peters*, Civil Action No. 05–0470, Memorandum Opinion and Order at 4–5 (D.D.C. March 15, 2006). The renewed motion cures that deficiency by including the certifications and affidavits described above.

**7.** Of course, the Court agrees that the admissibility of these exhibits is limited by the scope of the hearsay exception in Rule 803(8). For example, "[r]eports otherwise admissible un-

der Rule 803(8) may not contain double hearsay" unless the second level of hearsay falls within the scope of another hearsay exception. *Budden v. United States*, 748 F.Supp. 1374, 1378 (D.Neb.1990). Mr. Moncada has made no effort to identify double hearsay or similarly problematic aspects of any of the exhibits at issue, and the Court observes that it need not and has not relied on any aspects of the exhibits that *could* constitute double hearsay.

**8.** Title VII provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment ... in executive agencies ... shall be made free from any discrimination based on race, color, religion,

that the FAA violated the ADEA by failing to hire him because of his age. *See* Compl. ¶ 14.[9] Because he offers no direct evidence of discrimination, his disparate treatment claims under both statutes must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Barnette v. Chertoff,* 453 F.3d 513, 515 (D.C.Cir.2006). Under that framework, a plaintiff must first establish a prima facie case of discrimination. *See Teneyck v. Omni Shoreham Hotel,* 365 F.3d 1139, 1149 (D.C.Cir.2004). Doing so creates a rebuttable presumption of discrimination and "triggers the employer's burden to produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason." *Id.* at 1151. If the employer meets this burden, then all presumptions drop away and the Court must address the "ultimate question": "whether intentional discrimination may be inferred from all the evidence before the trier of fact," including any evidence that the employer's asserted reasons are pretextual. *Id.*

■ As the D.C. Circuit has explained, however, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*" at the summary judgment stage if (1) the plaintiff has suffered an adverse employment action, and (2) the defendant has asserted a non-dis-

criminatory reason for its behavior. *Brady v. Office of the Sergeant at Arms,* 520 F.3d 490, 494 (D.C.Cir.2008).

> Rather, ... in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [any statutorily prohibited factors]?

*Id.*

■ This is a *Brady* case. Mr. Moncada has suffered several adverse employment actions—specifically, he has not been selected for ten positions. In addition, the FAA has asserted specific non-discriminatory reasons for not selecting Mr. Moncada. For example, the FAA has asserted that it did not hire Mr. Moncada for positions 63365 and 63281 largely because Mr. Moncada failed to submit certain additional application materials and, in the absence of those materials, the agency reasonably concluded that he was not qualified for those positions. *See* Defendant's Statement of Material Facts Not In Dispute ¶ 6.[10] The FAA similarly has asserted nondiscriminatory reasons for not selecting Mr. Moncada for all of the other positions at issue. *See id.* ¶ 4 (stating that Mr. Moncada was not hired for position 59581 because the highest ranked candidate was

---

sex, or national origin." 42 U.S.C. § 2000e–16.

**9.** The ADEA provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in executive agencies ... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

**10.** All acknowledge that these additional materials—called "knowledge, skills and abili-

ties" statements, or "KSA statements"—are *optional* parts of the application package. They are often important, however, because they allow applicants to further expound upon their qualifications and therefore permit the agency to more accurately evaluate them. *See* Mot. S.J., Ex. 14, Vacancy Announcement for Position 63281 at 2 (April 12, 2002) (describing the purpose of the optional KSA statements).

hired for that position); *id.* ¶¶ 7, 10 (stating that Mr. Moncada was not hired for positions 61908 and 65074, respectively, because he was not qualified); *id.* ¶ 8 (stating that Mr. Moncada was not hired for position 54739 because that position was canceled); *id.* ¶ 9 (stating that Mr. Moncada was not hired for position 64940 because he was less qualified than others); *id.* ¶ 11 (stating that Mr. Moncada was not hired for position 59858 because the FAA "has no record of Plaintiff applying for the position").[11]

As Mr. Moncada suffered adverse employment actions and the agency has articulated non-discriminatory reasons for its behavior, the Court will "turn directly to the central issue: whether [Mr. Moncada] produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against" Mr. Moncada. *Brady v. Office of the Sergeant at Arms*, 520 F.3d at 495.

### B. Analysis

Mr. Moncada argues that a reasonable jury could infer discrimination from (1) his interactions with FAA personnel, (2) alleged structural flaws in the FAA's hiring procedures, and (3) the hiring of Anaida Haas (a 23–year–old woman of Russian descent) rather than Mr. Moncada for position 63281. The Court disagrees.

#### 1. Interactions With FAA Personnel

■ Mr. Moncada argues that a reasonable jury could infer national origin discrimination because (1) FAA employees were aware of his national origin, (2) he was qualified for the positions at issue, and (3) he was not hired. *See* Mot. S.J., Ex. 13, Deposition of Oscar Moncada at 33–38 (May 30, 2007) ("Moncada Dep.").[12] Mr. Moncada argues that a reasonable jury could infer sex discrimination because (1) he spoke only to female FAA employees when he telephoned the agency, (2) he was qualified for the positions at issue, and (3) he was not hired. *See id.* at 40–45. Finally, Mr. Moncada argues that a reasonable jury could infer age discrimination because (1) he has met FAA employees between the ages of 25–30 who do work similar to the work he would like to do, (2) "it's part of the culture to . . . discriminate [against] people [over] 40," (3) he was qualified for the positions at issue, and (4) he was not hired. *Id.* at 50; *see also id.* at 51–52. All of these arguments fail.

■ At this stage the Court is to determine whether a reasonable jury could conclude that Mr. Moncada suffered discrimination by crediting his evidence and drawing all *justifiable* inferences in his

---

11. One of these assertions is problematic. The FAA states that "[o]n December 9, 2001, the selecting official approved the expert panel's recommendation to hire the highest ranked candidate" for position 59518, and cites exhibit 10—which the FAA refers to as a "Headquarters Merit Selection Certificate"—in support. Defendant's Statement of Material Facts Not In Dispute ¶ 4. But exhibit 10 is *not* a Headquarters Merit Selection Certificate, nor does it say what the FAA says it says. Nevertheless, exhibit 10—entitled "Qualifications Worksheet"—*does* indicate that "the personnel specialist determined that [Mr. Moncada] was not qualified for [position 59518] because he did not meet the Specialized Experience requirements of the position." Reply S.J., Ex. 21, Affidavit of Paulette Randolph ¶ 2 (April 17, 2008). Thus, the FAA has asserted a legitimate reason for not selecting Mr. Moncada for position 59518.

12. To be clear, Mr. Moncada believes that FAA employees were aware of his national origin for two reasons: (1) his last name, which appears on his applications, suggests a Latin American heritage, and (2) his "noticeable Latin accent," Opp. S.J., Declaration of Oscar Moncada ¶ 7 (Jan. 20, 2008), was detectable to those FAA employees to whom he spoke on the telephone when he called to check on the status of his applications.

favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505. But even assuming that Mr. Moncada has accurately described his interactions with FAA personnel, the facts above are insufficient to justify an inference of discrimination. No reasonable jury could conclude that the FAA discriminated against Mr. Moncada simply because the agency was aware of his national origin; there is obviously a large difference between being aware of an applicant's national origin and choosing not to hire an applicant because of his national origin. Nor could a reasonable jury conclude that the FAA discriminated against Mr. Moncada on the basis of his sex. It may be true that Mr. Moncada "never got [an] opportunity to talk to a male" FAA employee when he called the agency; it also may be true that "a large portion of the employees in FAA [are] females." Moncada Dep. at 40. But of course, neither fact suggests that the FAA intentionally discriminated against Mr. Moncada.

Finally, no reasonable jury could conclude that the FAA discriminated against Mr. Moncada on the basis of his age. Certainly no reasonable jury could conclude that the agency discriminated against Mr. Moncada simply because, he alleges, there is a general societal bias against older workers. (If a jury could so conclude, plaintiffs would never have to offer any evidence that they themselves suffered discrimination to survive summary judgment.) And even if it is true that Mr. Moncada has met younger FAA employees, that fact has no probative value with respect to the central issue in this case: whether the FAA discriminated against Mr. Moncada. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. 2505 (summary judgment may be granted

if the nonmovant's evidence is "not significantly probative"). Mr. Moncada does not claim that any of these younger employees applied for the positions for which he applied, *see* Moncada Dep. at 51–52, and nothing in the record suggests that they did.

### 2. Structural Flaws

■ Mr. Moncada also argues that a reasonable jury could conclude that he suffered discrimination on the basis of his national origin, sex and age because (1) the FAA requests information about applicants' race (and perhaps nationality and age) as part of the application process, *see* Opp. S.J. at 3–7, 15, and (2) the "FAA's use of subjective criteria in the selection process provides a ready mechanism for discrimination." *Id.* at 7. The Court disagrees. Mr. Moncada offers no evidence that either of these features of the FAA's hiring process—both of which have obvious legitimate uses—were used as pretexts for discrimination.[13] In other words, his allegations based on these purported structural flaws are entirely unfounded, unsubstantiated and speculative. Such allegations "create[ ] no 'genuine issue of fact' and will not withstand summary judgment." *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993); *see also McKenzie v. Principi,* 54 Fed.Appx. 1, 3 (D.C.Cir.2002) ("A plaintiff that offers only 'mere speculation[ ]' to refute the employer's proffered legitimate, non-discriminatory reason, however, fails to create a genuine issue of material fact to avoid summary judgment.") (quoting *Brown v. Brody,* 199 F.3d 446, 459 (D.C.Cir.1999)).

### 3. Hiring of Anaida Haas

■ Mr. Moncada's final argument is that a reasonable jury could conclude that

---

**13.** According to the FAA, the agency collects demographic information on applicants because it is required by law to do so. *See*

Reply S.J. at 5. And of course, the use of subjective criteria in employment decisions is neither rare nor necessarily insidious.

he suffered discrimination on the basis of his national origin, sex and age because the FAA hired Anaida Haas (a 23–year-old woman of Russian descent) rather than Mr. Moncada for position 63281. *See* Opp. S.J. at 12 (arguing that the hiring of Ms. Haas "demonstrates the subjective and discriminatory nature of the screening process used by the FAA" because Mr. Moncada "was much more qualified for the position" than Ms. Haas). The Court disagrees.

Courts have "consistently declined to serve as ... 'super-personnel department[s] that reexamine[ ] an entity's business decisions' " when considering plaintiffs' challenges to employers' non-discriminatory explanations for non-selection. *Holcomb v. Powell*, 433 F.3d at 897 (citing *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C.Cir.1999)). Thus, "[a] plaintiff asserting that an employer's explanation is pretextual based upon comparative qualifications faces a formidable task." *Nyunt v. Tomlinson*, 543 F.Supp.2d 25, 39 (D.D.C.2008). "[I]n order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C.Cir.2007). The Court perceives no differences between the two candidates so stark and strange as to be "inherently indicative of discrimination." *Id.* After all, in reality, the two candidates were competing for different positions. Ms. Haas applied for position 63281 at the GS–7, GS–9 and GS–11 levels; she was hired at the GS–7 level. *See* Gant Dep. at 75. Mr. Moncada, on the other hand, applied for position 63281 at the GS–11 level only. *Id.* at 46, 72.[14]

As the FAA points out, "[a]n individual may qualify for a position at the lower grade, but may not necessarily qualify for the same position at a higher grade level." Reply S.J. at 6; *see also* Gant Dep. at 45, 50–54, 58–61, 105. Mr. Moncada does not argue that Ms. Haas was unqualified for the position at the GS–7 level, and Mr. Moncada did not apply for the position at the GS–7 level. Thus, even assuming that Ms. Haas lacks some of Mr. Moncada's skills and experience— and therefore would not qualify at the GS–11 level—the agency's decision to hire Ms. Haas for the GS–7 position (rather than Mr. Moncada for the higher level position) is hardly "inexplicable" and therefore suggestive of discrimination. *Lathram v. Snow*, 336 F.3d 1085, 1091 (D.C.Cir.2003).

### 4. Missing Application

That leaves one loose end to address. The FAA argues that it did not select Mr. Moncada for position 59858 because Mr. Moncada did not apply for the position. *See* Defendant's Statement of Material Facts Not In Dispute ¶ 11. Mr. Moncada insists that he did apply for the position, *see* Moncada Decl. ¶ 4, and that this factual dispute precludes summary judgment. *See* Opp. S.J. at 13–14. His theory seems to be that a reasonable jury could conclude that the agency is lying about not having received the application in order to "cover up" discriminatory intentions. *See id.* at 13. But why? There is no indication that the agency is lying, and the mere fact that Mr. Moncada submitted an application and the agency now has no record of it hardly suggests discrimination. *Cf. Montgomery v. Chao*, 495 F.Supp.2d 2, 16 (D.D.C.2007)

---

**14.** When a position is advertised at more than one level, applicants may apply at one or more of those levels, and the FAA may choose to hire someone who applies at a lower level rather than someone who applies at a higher level. Not surprisingly, applicants who apply at higher levels are required to have higher-level skills and experience. *See* Gant Dep. at 71–73.

("There is nothing on the record from which a reasonable jury could conclude that the [agency] intentionally lost or misplaced [Mr. Moncada's] application ... through anything other than inadvertence.") (internal quotation marks and citation omitted). Thus, while there may be a dispute as to whether Mr. Moncada applied for position 59858, it is not material.

## V. CONCLUSION

Mr. Moncada offers no persuasive reasons to strike the FAA's exhibits, and his evidence of discrimination is—at best— "merely colorable." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505. The Court therefore has no choice but to deny Mr. Moncada's motion to strike and grant the FAA's renewed motion for summary judgment. An Order consistent with this Opinion will issue this same day.

SO ORDERED.